# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHADID AL-BARR aka DWAYNE X. HARMON,<br><br>            Plaintiff,<br><br>    v.<br><br>GAIL LEWIS, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:03-cv-06148-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 74) |

I.   Findings and Recommendations Addressing Defendants' Motion for Summary Judgment

   A.   Procedural History

Plaintiff Shadid Al-Barr aka Dwayne X. Harmon ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed August 25, 2003, against defendants Lewis, Bonilla, and Smith ("defendants") for violating the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Docs. 1, 10, 26.) On December 27, 2006, defendants filed a motion for summary judgment. (Doc. 74.) Plaintiff filed an opposition on May 29, 2007.[1] (Doc. 80.)

///

///

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on February 6, 2004. <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988). (Doc. 13.)

1

B.  <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

///

return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

C.    <u>Discussion</u>

At the time of the events in question, plaintiff was a state prisoner housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. At issue in this action is whether or not defendants denied plaintiff access to religious services, in violation of the Free Exercise Clause of the First Amendment, and discriminated against plaintiff on the basis of his religion, in violation of the Equal Protection Clause of the Fourteenth Amendment.

In his complaint, plaintiff alleges that in 1999, he and other Nation of Islam ("NOI") members were denied access to the prison chapel for religious study groups, and were excluded from Ramadan, and other special Islamic events. Plaintiff alleges that in February and March of 2003, he and NOI members were again excluded from special Islamic events. Defendant Lewis, who was the Warden of PVSP at the time, defendant Bonilla, who was the Community Resources Manager at PVSP at the time, and defendant Smith, who was the Community Resources Manager at the California Department of Corrections and Rehabilitation headquarters in Sacramento at the time, deny that they violated plaintiff's constitutional rights.

       1.     Free Exercise Claims

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner

v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

        a.    Exclusion from Chapel and Privilege Programs in 1999, and Eid-ul-Adha Festival in 2003

Defendants argue, supported by the declaration of PVSP Muslim chaplain Michael Salaam, that plaintiff's inability to access the prison chapel for religious study groups did not burden plaintiff's practice of religion because "[s]tudy groups are not central to the observance of Islam," and the inability to participate in study groups "is not a substantial burden to Muslim prisoners." (Doc. 74-6, Salaam Dec., ¶14.) Further, special events, called privilege programs because attendance is a privilege, are not essential to the observance of the Muslim religion, and nonattendance is not a burden on prisoners' religious observance. (Id., ¶5.) Due to a restriction barring participation in privilege programs, imposed in 1998 and 1999 due to safety and security concerns following an event at which NOI members were disruptive, plaintiff and other NOI members were excluded participation in Ramadan services and the Eid celebration in 1999. (Id., ¶8.) However, while "[f]asting from dawn to dusk is essential to the observance of Ramadan," it is not essential to attend services or the Eid celebration. (Id., ¶¶8, 9.) Prisoners were provided with sack lunches as a pre-dawn meal to facilitate the observance of Ramadan. (Id., ¶10.) Inmates wishing to receive a sack lunch could ask Chaplain Salaam to be put on the list, and no inmates were denied sack lunches by Salaam during 1999. (Id., ¶¶11, 12.)

The restriction against NOI members participating in privilege groups was lifted after the Reverend Louis Farrakhan, leader of the NOI, announced changes which harmonized NOI doctrine with mainstream Islam, and plaintiff was allowed to participate in Ramadan in 2000, 2001, and 2003.

5

(Id., ¶13; Al-Barr Depo., 64:4-21.)  In 2003, plaintiff was not allowed to participate in the Eid-ul-Adha festival in 2003, but does not know why he was not on the ducat list.  (Doc. 74-3, Al-Barr Depo., 64:25-65:65:5.)  Chaplain Salaam and all three defendants deny acting to exclude plaintiff from this festival.  (Salaam Dec., ¶16; Lewis Dec., ¶7; Bonilla Dec., ¶11; Smith Dec., ¶6.)  Salaam, who was responsible for ducating inmates to the celebration, denies excluding plaintiff or NOI members in general.  (Salaam Dec., ¶16.)

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  Plaintiff must do more than attack the credibility of defendants' evidence, see National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert . . . judgment."), and arguments or contentions set forth in a responding brief do not constitute evidence, see Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence).[2]

Plaintiff has not submitted any evidence that in denying plaintiff access to the prison chapel for religious study groups, and excluding plaintiff from Ramadan services and other special events in 1999, defendants substantially burdened the practice of plaintiff's religion and interfered "'with a tenet or belief . . . central to religious doctrine.'"  Freeman, 125 F.3d at 737 (quoting Graham, 822

---

[2] However, verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

6

F.2d at 851). Defendants have submitted evidence that exclusion from these activities was not central to the observance of Islam and did not substantially burden Muslim prisoners, and because plaintiff has not submitted any evidence raising a dispute of material fact as to that issue, defendants are entitled to judgment as a matter of law on plaintiff's free exercise claim arising from the exclusion from these activities in 1999.

Plaintiff also has not submitted any evidence supporting a claim that defendants were responsible for his exclusion from the Eid-ul-Adha festival in 2003. Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). Absent evidence that defendants Lewis, Bonilla, and Smith were responsible for his exclusion from this festival, defendants are entitled to judgment as a matter of law on plaintiff's free exercise claim.

### 2. Equal Protection Claims

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "[P]rison officials cannot discriminate against particular religions." Freeman, 125 F.3d at 737. "'To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "To avoid summary judgment, [plaintiff] 'must produce evidence sufficient to permit a reasonable trier of fact to find by

7

a preponderance of the evidence that [defendants'] decision was . . . motivated'" by plaintiff's membership in a protected class. Serrano, 345 F.3d at 1082 (quoting Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)).

"Where the challenged governmental policy is 'facially neural,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." Lee, 250 F.3d at 687 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (264-66) (1977) (internal citations omitted)). "The mere fact that [a] facially neutral polic[y] had a foreseeably disproportionate impact on an identifiable group does not mean that [it] violated the Equal Protection Clause." Id. at 687.

      a.  Exclusion From Chapel in 1999

Defendants argue, supported by the declaration of defendant Lewis, who implemented the policy in question, that the plaintiff and other NOI members were excluded from accessing the chapel for religious study groups pursuant to the prison's policy that inmates wishing to meet in the chapel must be supervised by a chaplain or a volunteer representative of a religious organization from outside the prison. (Doc. 74-4, Lewis Dec., ¶3.) The policy was instituted to preserve the safety and security of the institution in response to a fight between Muslim inmates and members of the Crips street gang that took place in the chapel when inmates were allowed to meet without supervision. (Id., ¶4.) There are no cameras or guards in the chapel, so a staff person or volunteer must be present to supervise the inmates. (Id., ¶3.) Volunteers are considered temporary staff, and are trained to report violations of prison rules to prison authorities. (Id.)

Plaintiff filed an appeal in 1999 requesting access to the chapel for study groups, but it was partially denied because there were no staff or volunteer chaplains available to provide leadership and supervision for an NOI study group. (Doc. 74-3, Exhibit B; Doc. 74-5, Bonilla Dec., ¶4.) Plaintiff was encouraged to fill out a questionnaire regarding his religious beliefs so that defendant Bonilla could try to find a volunteer to lead an NOI study group. (Bonilla Dec., ¶4.) Defendant Bonilla received the questionnaire on February 7, 2000, and although plaintiff listed one NOI figure who could lead religious services or study groups, that person was unavailable to lead study groups at PVSP. (Id., ¶5.) In September 2001, Chaplain Salaam tried to get an NOI representative, General

8

1  Muhammed, to lead a study group for NOI members, but unfortunately, General Muhammed was
2  unable to come to the prison on days when Salaam worked. (Salaam Dec., ¶14.)
3   Plaintiff has not submitted any evidence bringing into dispute defendants' position that the
4  policy restricting inmates from chapel access unless there is a chaplain or a religious volunteer
5  available to supervise is applicable to all inmates. Plaintiff has not submitted any evidence that this
6  facially neutral policy had a disproportionate impact on NOI members and even assuming for the
7  sake of argument that it did, the record is devoid of any evidence that the defendants implemented
8  or enforced this neutral policy in order to intentionally discriminate against NOI members.
9  Defendants are entitled to summary adjudication on plaintiff's equal protection claim arising from
10 denial of access to the prison chapel in 1999.

       b.  Exclusion From Privilege Programs in 1999

12  Defendants argue that plaintiff was excluded participation in Ramadan services and the Eid
13 celebration in 1999 due to a restriction barring participation in privilege programs, imposed in 1998
14 and 1999 due to safety and security concerns following an event at which NOI members were
15 disruptive. (Lewis Dec., ¶5; Bonilla Dec., ¶6-9; Salaam Dec., ¶3-7.) Defendants contend that on
16 February 19, 1998, Eid-ul-Fitr, a Muslim celebration marking the end of the Ramadan fast, was held
17 at the prison for the benefit of Muslim prisoners. (Salaam Dec., ¶3.) Defendants contend that NOI
18 members displayed disruptive behavior, including addressing each other by military rank, saluting
19 each other in military fashion, standing at attention in a military fashion, and demanding that their
20 inmate minister be allowed to address the audience on an equal basis with the Muslim chaplain. (Id.)
21 Defendants contend that some of the Orthodox Muslims were upset by the behavior of NOI
22 members, and told this to Chaplain Salaam. (Id.) Chaplain Salaam reported this behavior to
23 defendant Bonilla, and in light of the behavior of NOI members on February 19, 1998, Salaam and
24 defendant Bonilla believed it would be a threat to the safety and security of the institution to allow
25 NOI members to attend privilege programs held for the benefit of Muslim inmates. (Salaam Dec.,
26 ¶4; Bonilla Dec., ¶6.) This restriction against participation in privilege programs by NOI members
27 was lifted in 2000. (Salaam Dec., ¶13.)
28 ///

1       In response, plaintiff has submitted the declarations from two inmate witnesses attesting that
2   they were present at the 1998 Eid-ul-Fitr celebration and did not witness any disruptive behavior by
3   NOI members. (Doc. 80, Thompson Dec., ¶¶2, 3; Williams Dec., ¶1, 3.) These declarations are
4   sufficient to bring into dispute defendants' contention that the restriction against participation in
5   privilege groups by NOI members was necessary to preserve the safety and security of the institution
6   as a result of disruptive behavior by NOI members on February 19, 1998. See Freeman, 125 F.3d
7   at 737-38. Defendants Lewis and Bonilla are not entitled to summary adjudication on plaintiff's
8   equal protection claim arising out his inability to participate in privilege programs in 1999.

9       However, defendants have submitted evidence that defendant Smith, who was the
10  Community Resources Manager at the California Department of Corrections and Rehabilitation
11  headquarters in Sacramento at the time, responded to a letter from plaintiff that had been forwarded
12  to him by Senator Dianne Feinstein's office in 2000. (Doc. 74-7, Smith Dec., ¶¶2, 3.) Defendant
13  Smith denies participating in any decision to exclude plaintiff or other NOI members from Ramadan
14  or any other privilege program at the prison, and attests that he took no further action after sending
15  plaintiff a letter in 2000. (Id., ¶6.) There is no evidence that defendant Smith was responsible for
16  the decision to exclude NOI from privilege programs in 1998 and 1999, or was otherwise involved
17  in the events which caused plaintiff to be barred from participation in privilege programs in 1999.
18  Indeed, plaintiff's own allegations do not address any involvement by defendant Smith until 2003,
19  when plaintiff contacted defendant Smith by letter in April of 2003. (Doc. 1, Comp., 7:23-27.)
20  Accordingly, defendant Smith is entitled to summary adjudication on plaintiff's equal protection
21  claim arising from these events.

22                  c.     Exclusion From Eid-ul-Adha Festival in 2003

23      Finally, as previously discussed, although plaintiff was not allowed to participate in the Eid-
24  ul-Adha festival in 2003, plaintiff does not know why he was not on the ducat list, and all three
25  defendants deny acting to exclude plaintiff from this festival. Plaintiff has not submitted any
26  evidence that defendants were responsible for excluding him from participating in the Eid-ul-Adha
27  festival in 2003. Therefore, defendants are entitled to summary adjudication on plaintiff's equal
28  protection claim against them.

    3.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity on plaintiff's claims against them. Because the court recommends granting defendants' motion for summary judgment on all claims except the equal protection claim against defendants Lewis and Bonilla arising out of plaintiff's inability to participate in privilege programs in 1999, the court addresses defendants' qualified immunity argument as to only that claim.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). It is undisputed that NOI members were restricited from participating in privilege groups in 1999. Plaintiff has presented evidence that NOI members were not disruptive at the 1998 Eid-ul-Fitr celebration, bringing into dispute defendants' proffered explanation that the restriction was imposed for safety and security concerns following NOI members' disruptive behavior at that celebration. These facts are sufficient to show a violation of the Equal Protection Clause. Freeman, 125 F.3d at 737.

At the time the restriction against NOI members participating in privilege groups was imposed, the law was "sufficiently clear that a reasonable official would understand," Saucier, 533

U.S. at 202 (citation omitted), that he could not intentionally treat a group of inmates differently based on their religion and that if he did so, the inmates' constitutional right to equal protection would be violated, Freeman, 125 F.3d at 737.  Due to the existence of material factual disputes concerning whether the restriction was imposed due to disruptive behavior by NOI members or not, defendants Lewis and Bonilla are not entitled to qualified immunity on this claim.

### D.     Conclusion

For the foregoing reasons, the court HEREBY RECOMMENDS that defendants' motion for summary judgment, filed December 27, 2006, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion for summary adjudication on plaintiff's free exercise and equal protection claims arising from plaintiff's inability to access the prison chapel for religious study groups in 1999 be GRANTED;

2. Defendants' motion for summary adjudication on plaintiff's free exercise claim arising out of exclusion from the privilege programs in 1999 be GRANTED;

3. Defendant Smith's motion for summary adjudication on plaintiff's equal protection claim arising out of exclusion from the privilege programs in 1999 be GRANTED;

4. Defendants Lewis and Bonilla's motion for summary adjudication on plaintiff's equal protection claim arising out of exclusion from the privilege programs in 1999 be DENIED;

5. Defendants Lewis and Bonilla's motion for summary adjudication on plaintiff's equal protection claim arising out of exclusion from the privilege programs in 1999 on qualified immunity grounds be DENIED;

6. Defendants' motion for summary adjudication on plaintiff's free exercise and equal protection claims arising from plaintiff's exclusion from the 2003 Eid-ul-Adha festival be GRANTED; and

7. This matter be set for jury trial on plaintiff's surviving equal protection claim against defendants Lewis and Bonilla.

///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 3, 2007**                             /s/ Sandra M. Snyder
                                                                 UNITED STATES MAGISTRATE JUDGE